ORDERED.

Dated:  **October 05, 2020**

Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                          Case No. 8:19-bk-03619-MGW
                                                                Chapter 13

Steven B. Watkins,

    Debtor.
_____/

## MEMORANDUM OPINION ON
## EXPIRATION OF TAX CERTIFICATES

This case is one of first impression: Under section 197.482, Florida Statutes, a tax certificate expires after seven years if no tax deed has been applied for and no other administrative or legal proceeding of record has existed. Here, Propel Financial, which held a tax certificate against the Debtor's homestead, applied for a tax deed within seven years. But the tax deed sale was canceled when the Debtor filed a prior bankruptcy case in August 2011. After that case was dismissed, Propel waited until January 22, 2019—more than seven years after the tax certificates were issued—to reapply for a tax deed. This Court must decide whether a tax certificate

expires when a tax deed was applied for within seven years but no tax sale took place during that time period.

Based on the Fifth District Court of Appeal's decision in *Northcutt v. Balkany*,[1] this Court concludes that the filing of an unsuccessful tax deed application tolls—but does not render inapplicable—section 197.482's seven-year limitations period. So, the Court must toll the limitations period to account for Propel's original tax deed action, as well as the Debtor's prior bankruptcy case. In particular, the seven-year limitations period should be tolled from the time Propel filed its original tax deed application until the automatic stay no longer applied to the Debtor's homestead. Even taking into account the tolling, Propel still failed to reapply for the tax deed within the seven-year limitations period. Propel's tax certificates have therefore expired.

## Factual Background

Before discussing the facts of this case, some background on Florida's statutory scheme for collecting ad valorem taxes is helpful. Generally speaking, property taxes are due by November 1st of the year the taxes are assessed.[2] If the taxes are not paid, they become delinquent the following April 1st.[3] The tax collector

---

[1] 727 So. 2d 382 (Fla. 5th DCA 1999).

[2] § 1977.333, Fla. Stat. ("All taxes shall be due and payable on November 1 of each year or as soon thereafter as the certified tax roll is received by the tax collector.").

[3] *Id.* ("Taxes shall become delinquent on April 1 following the year in which they are assessed or immediately after 60 days have expired from the mailing of the original tax notice, whichever is later.").

is required to collect delinquent taxes by conducting a tax certificate sale on June 1st.[4]

Tax certificates are sold at a public auction to the bidder who will pay the delinquent taxes (and other costs) and demand the lowest interest rate from the property owner.[5] Bidding on the interest rate starts at 18%, the maximum rate allowed by law, and is bid down until the certificate is awarded to the lowest bidder.[6] Once sold, the tax certificate becomes a lien against the property.[7] A property owner can redeem the tax certificate by paying the face amount of the certificate (which includes the delinquent taxes), plus the interest on the certificate.[8]

If the tax certificate remains unpaid for two years after the taxes became delinquent, the certificate holder can force a public auction of the property by

---

[4] § 197.402(3), Fla. Stat. ("[O]n or before June 1 or the 60th day after the date of delinquency, whichever is later, the tax collector shall advertise once each week for 3 weeks and shall sell tax certificates on all real property having delinquent taxes.").

[5] § 197.432(6), Fla. Stat. ("Each certificate shall be awarded to the person who will pay the taxes, interest, costs, and charges and will demand the lowest rate of interest, not in excess of the maximum rate of interest allowed by this chapter."). The maximum rate of interest is 18%. § 197.172(2), Fla. Stat.

[6] § 197.432(6), Fla. Stat.

[7] § 197.102(f), Fla. Stat. ("'Tax certificate' means a paper or electronic legal document, representing unpaid delinquent real property taxes, non-ad valorem assessments, including special assessments, interest, and related costs and charges, issued in accordance with this chapter against a specific parcel of real property and becoming a first lien thereon, superior to all other liens, except as provided by § 197.573(2).").

[8] § 197.472(1), Fla. Stat. ("A person may redeem a tax certificate at any time after the certificate is issued and before a tax deed is issued unless full payment for a tax deed is made to the clerk of court . . . . The person redeeming a tax certificate shall pay the tax collector the face amount plus all interest, costs, and charges.").

applying for a tax deed with the county tax collector.[9] To apply for a tax deed, the

certificate holder must pay (in addition to certain statutory costs) all other tax

certificates on the property.[10] Once the tax deed application is filed, it is forwarded to

the clerk of court, who notices the property for sale and then holds a public auction,

where the property will be sold to the highest bidder.[11]

There is one caveat to all this: a tax certificate holder is given a limited

window to enforce its tax certificate. Under section 197.482, Florida Statutes, a tax

certificate only lasts for seven years. If a tax certificate holder fails to apply for a tax

deed within seven years, the tax certificate expires:

> Seven years after the date of issuance of a tax certificate,
> which is the date of the first day of the tax certificate sale
> advertised under § 197.432, if a tax deed has not been
> applied for, and no other administrative or legal
> proceeding, including a bankruptcy, has existed of record,
> the tax certificate is null and void and shall be canceled.[12]

With that background in mind, let's turn to the facts of this case: Here, the

Debtor owns property located at 410 Bryn Mawr Island in Bradenton, Florida. The

Debtor failed to pay his 2008 and 2009 property taxes for the property. On June 1,

---

[9] § 197.502(1), Fla. Stat. ("The holder of a tax certificate at any time after 2 years have elapsed since April 1 of the year of issuance of the tax certificate and before the cancellation of the certificate, may file the certificate and an application for a tax deed with the tax collector of the county where the property described in the certificate is located.").

[10] *Id.*

[11] § 197.542, Fla. Stat ("Real property advertised for sale to the highest bidder as a result of an application filed under § 197.502 shall be sold at public auction by the clerk of the circuit court . . . .").

[12] § 197.482, Fla. Stat.

2009, Propel Financial was awarded the tax certificate for the delinquent 2008 taxes; on June 1, 2010, Propel was awarded the tax certificate for the delinquent 2009 taxes.

On April 19, 2011, more than two years after the 2008 taxes became delinquent, Propel applied for a tax deed. As part of the application process, Propel was required to pay the real estate taxes for 2010. Once all the outstanding taxes were paid, the Manatee County Tax Collector forwarded the tax deed application to the Manatee County Clerk of Court, who noticed and scheduled a tax deed sale for August 12, 2011.

But, on the day before the tax deed sale was scheduled to take place, the Debtor filed for chapter 13 bankruptcy.[13] As a result, the tax deed sale was canceled, and two months later the tax deed action was essentially dismissed. The Debtor's chapter 13 case lasted roughly nine months before ultimately getting dismissed on April 5, 2012 because the Debtor could not confirm a chapter 13 plan.[14] Ten months later, after the chapter 13 trustee issued his final report, the Debtor's bankruptcy case was officially closed.

For the next six years, nothing happened—at least with respect to the tax certificate. For reasons that are unclear, Propel did not take any action on its tax certificate until it applied for another tax deed on January 22, 2019—more than seven years after its tax certificate was issued.

---

[13] *In re Steven B. Watkins*, Case No. 8:11-bk-15202-MGW, Doc. No. 1.

[14] Case No. 11-bk-15202-MGW, Doc. No. 43.

Once again, the Tax Collector forwarded the tax deed application to the Manatee County Clerk of Court, who opened a new action and ultimately scheduled a second tax deed sale for April 22, 2019. The same day as the second tax deed sale, the Debtor again filed for bankruptcy, forcing the Manatee County Clerk of Court to cancel the tax deed sale.

In this second bankruptcy case, Propel has filed a $41,355.70 secured claim.[15] It's not entirely clear to the Court how Propel calculated its claim.[16] Suffice it to say the claim is for delinquent real estate taxes.[17] The Debtor has objected to Propel's proof of claim, arguing that Propel's tax certificates have expired under section 197.482 because Propel's original tax deed application was unsuccessful and it failed to file a new one within the statutory-seven year period.

Propel, however, contends that under section 197.482, the tax certificates expire only if no tax deed has been applied for within seven years. Because it is undisputed a tax deed was applied for—even if unsuccessfully—within seven years, Propel Financial argues that the seven-year limitations period no longer applies. This Court must now decide whether Propel's tax certificates have expired.

---

[15] Claim No. 3-1.

[16] *Id.* Attached to Propel's proof of claim is a "Tax Lien Payoff Quote," which appears to have been generated by the Manatee County Tax Collector. It shows that there is $41,355.70 in outstanding property taxes on the property.

[17] *Id.*

## Conclusions of Law

Whether Propel's tax certificates have expired turns on the meaning of section 197.482, Florida Statues, which generally provides that a tax certificate expires if a tax deed is not applied for within seven years:

> Seven years after the date of issuance of a tax certificate, . . . if a tax deed has not been applied for, and no other administrative or legal proceeding, including a bankruptcy, has existed of record, the tax certificate is null and void and shall be canceled.[18]

Although the statute is clear that a tax certificate expires if no tax deed is applied for within seven years, it is silent as to what happens if a tax deed has been applied for within seven years but that tax deed application is ultimately unsuccessful.

To determine what happens in that scenario, this Court would ordinarily look to decisions by the Florida Supreme Court interpreting section 197.482.[19] Unfortunately, the Florida Supreme Court has not addressed the issue. When, like here, the Florida Supreme Court has not spoken definitively on an issue, this Court must, in turn, look to Florida's intermediate appellate courts.[20]

---

[18] § 197.482, Fla. Stat.

[19] *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005).

[20] *Id.* ("The Florida Supreme Court has not spoken definitively on the issues before us, therefore, we look to relevant decisions of Florida's intermediate appellate courts.").

Although no intermediate appellate court has addressed the narrow issue before this Court, the Fifth District Court of Appeal's decision more than twenty years ago in *Northcutt v. Balkany* is instructive.[21]

That case involved an earlier version of section 197.482.[22] The version at issue in *Northcutt*, which is similar to the one at issue here, provided that a tax certificate was void if, within seven years after the tax certificate was issued, a tax deed had not been applied for and no other administrative or legal proceeding had existed of record.[23]

The tax certificate holder in that case failed to file a tax deed application until more than seven years after the tax certificates.[24] In the meantime, the property owner had filed for bankruptcy, and his property was conveyed to Caron Balkany, as trustee.[25] To avoid losing the property, Balkany redeemed the tax certificates and then later sued the tax collector for failing to declare the tax certificates void after seven years.[26]

The tax collector argued that because the property owner had been involved in a bankruptcy proceeding, one of the conditions to the tax certificate expiring—i.e.,

---

[21] 727 So. 2d 382 (Fla. 5th DCA 1999).

[22] *Id.* at 384.

[23] *Id.* (quoting § 197.482, Fla. Stat. (1997)).

[24] *Id.* at 383.

[25] *Id.*

[26] *Id.* at 383 – 84.

no other legal proceeding of record had existed—had not been met.[27] The trial court rejected that argument as a matter of law and ruled that the tax certificates had expired.[28] According to the trial court, the seven-year limitations period in section 197.482 was not tolled by the property owner's bankruptcy filing.[29]

On appeal, the Fifth District Court of Appeal reversed the trial court. In doing so, the court noted that an even earlier version of section 197.482 provided that tax certificates expired after twenty years (rather than seven) if no tax deed had been applied for and if no other administrative or legal proceeding involving the tax certificate had been "pending" (rather than had "existed").[30] The court concluded that the Florida legislature's decision to change section 197.482 to provide that tax certificates would not expire if a legal proceeding "had existed" rather than if one had been "pending" indicated an intent to toll the seven-year limitations period if, at any point during the seven-year period, the property subject to the tax certificate had been the subject of an administrative or legal proceeding of record.[31]

---

[27] *Id.* at 384.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] The *Northcutt* court "recognize[d] the language used by the legislature in section 197.482 is not clear" and that it "should likely be refined to more clearly articulate the extent and duration of the toll period applicable to such proceedings." *Id.* at 386. In 2011, the Florida legislature amended section 95.051, Florida Statutes, to provide that the "period of an intervening bankruptcy tolls the expiration period of a tax certificate under § 197.482 and any proceeding or process under chapter 197." Ch. 2011-151, § 1, 2011 Fla. Sess. Law Serv. (West) (to be codified at § 95.051(1)(h), Fla. Stat.).

Even though the *Northcutt* court ultimately held that the tax certificates had not expired in that case, which is the opposite of the relief the Debtor seeks here, the Debtor nonetheless argues that *Northcutt* supports his argument that Propel's tax certificates have expired. How so?

The Debtor says Propel's argument can be reduced to the following syllogism: section 197.482 imposes two conditions to a tax certificate expiring, one of which is that no tax deed has been filed within seven years; here a tax deed was filed within seven years, which means one of the necessary conditions to the tax certificates expiring cannot be satisfied; therefore, the seven-year limitation no longer applies.[32] The Debtor argues that this reasoning was implicitly rejected in *Northcutt*.

This Court agrees. Had the *Northcutt* court adopted the reasoning that Propel Financial advocates here, it would have concluded that the seven-year limitation period was inapplicable because a legal proceeding of record had existed at some point during the seven-year period. But rather than hold that the seven-year limitations period was inapplicable, the *Northcutt* court instead held it was tolled by the bankruptcy filing. Thus, *Northcutt* implicitly rejected the argument that the seven-year limitations period was inapplicable if one of the conditions to the tax certificate expiring—i.e., that no proceeding of record had existed—had not been met.

Although this case deals with a different condition in section 197.482—i.e., the fact that a tax deed application had been filed—the *Northcutt* court's reasoning

---

[32] Doc. No. 49 at 2.

10

still applies with equal force here. Based on the reasoning in *Northcutt*, the Court

concludes that the filing of an unsuccessful tax deed application within the seven-

year period tolls the limitations period.

Interpreting section 197.482 otherwise would lead to an absurd result. Recall,

as explained in *Northcutt*, that the Florida legislature reduced the limitations period in

section 197.482 from twenty years to seven years.[33] But, if the Court adopts Propel's

reasoning, Propel could wait twenty years to file its second tax deed application—the

very outcome the Florida legislature sought to avoid by reducing the limitations

period from twenty years to seven years.

Worse, not only could Propel Financial wait twenty years, it could wait forty,

fifty, or sixty years because there would no longer be any applicable limitations

period. That would place applications for tax deeds alongside claims for certain

intentional torts based on abuse; actions based on sexual battery on minors; certain

intentional torts resulting in death; and actions for courts costs, fees, or fines as the

only civil claims that do not have a statute of limitation.[34]

Surely, that was not what the Florida legislature intended when it enacted

section 197.482. The only logical reading of section 197.482, Florida Statutes, is that

when a tax certificate holder files a tax deed application within seven years, the filing

of the tax deed application tolls—but does not render inapplicable—the seven-year

---

[33] *Northcutt*, 727 So. 2d at 384 – 85.

[34] § 95.011(7), (9), (10), (11), Fla. Stat.

11

limitations provision. So Propel was free to file a second tax deed application so long as it filed the tax deed application within the seven-year limitations period, taking into consideration any tolling of the seven-year limitations period.

That leaves for consideration whether Propel Financial timely filed its tax deed application. Propel concedes the original seven-year period expired on June 1, 2017.[35] And it is undisputed that Propel did not reapply for a tax deed application until January 22, 2019—600 days after the original seven-year limitations period expired. So, in order for Propel's tax deed application to have been timely filed, the seven-year limitations period must have been tolled for at least 600 days.

Propel claims the limitations period was tolled for 645 days. Propel says that, under the reasoning this Court just adopted, the limitations period would have begun tolling on April 19, 2011, the day Propel filed its first tax deed application. Ordinarily, the seven-year limitations period would have stopped tolling when the tax deed case was dismissed. But, in the interim, the Debtor filed for bankruptcy. Under *Northcutt*, the seven-year limitations period needs to be tolled to account for the bankruptcy case. According to Propel, the limitations period should have continued tolling through the date the Debtor's first bankruptcy case was closed on January 23, 2013. It is 645 days from April 19, 2011 to January 23, 2013.

While the Court agrees that the limitations period began tolling on April 19, 2011, the date Propel filed its first tax deed application, the Court disagrees that the

---

[35] Doc. No. 54 at ¶ 20.

limitations period continued to toll through the date the bankruptcy case was closed.
To determine when the limitations period should stop tolling, we once again turn to
*Northcutt*. In holding that a bankruptcy proceeding tolls section 197.482's seven-year
limitations period, the *Northcutt* court held that the limitations period was tolled so
long as the automatic stay covered the property subject to the tax certificate:

> We hold that section 197.482 does toll the seven year
> normal life of a tax certificate when a bankruptcy stay
> affects property covered by a tax certificate.[36]

Thus, the seven-year limitations period stops tolling once the automatic stay expires.

Upon the filing of a bankruptcy case, the automatic stay bars (among other
things) a wide range of acts that would affect or interfere with property of the debtor
or property of the estate.[37] When the stay expires depends on whether the act is
against property of the estate.[38] For acts against property of the estate, the automatic
stay expires when the property leaves the estate.[39]

---

[36] *Northcutt*, 727 So. 2d 382, 385 (Fla. 1st DCA 1999).

[37] 11 U.S.C. § 362(a)(1) – (8); 3 Collier on Bankruptcy ¶ 362.01 (16th ed. 2020) ("Section 362 provides for a broad stay of litigation, lien enforcement and other actions, judicial or otherwise that are attempts to enforce or collect prepetition claims. It also stays a wide range of actions that would affect or interfere with property of the estate, property of the debtor or property in the custody of the estate.").

[38] 11 U.S.C. § 362(c)(1), (2).

[39] *Id.* § 362(c)(1).

One of the ways property of the estate can leave the estate is through the exemption process.[40] "Property claimed as exempt leaves the estate and revests in the debtor if no objections are timely filed."[41] In his first bankruptcy case, the Debtor claimed his homestead as exempt.[42] No party objected to the Debtor's claim of exemption within 30 days of the Debtor's meeting of creditors, which was conducted on September 20, 2011. Because no party timely objected to the Debtor's claim of exemption, his homestead left the estate on October 20, 2011, and the automatic stay as to acts against the Debtor's homestead, such as the filing of a tax deed application, expired that day.

As a result, tolling of section 197.482's limitations period stopped on October 20, 2011. It is only 184 days from April 19, 2011, when the tolling began, until October 20, 2011, when the tolling ended. So the original seven-year limitations period, which expired June 1, 2017, was extended to December 2, 2017. But Propel didn't reapply for a tax deed until January 22, 2019—more than a year after the tolled section 197.482 limitations period passed. So Propel's tax certificates expired as of December 2, 2017.

---

[40] *In re Cogswell*, 2020 WL 5554393, at *13 (Bankr. M.D. Fla. Sep. 17, 2020) (explaining that property can leave the estate if it is sold, if it is abandoned, if stay relief is granted, or if it is claimed as exempt and the claim of exemption is not objected to).

[41] *In re Kretzer*, 48 B.R. 585, 588 (Bankr. D. Nev. 1985).

[42] *In re Watkins*, Case No. 8:11-bk-15202-MGW, Doc. No. 16.

Even if the Court considered when the automatic stay as to acts other than those against property of the estate expired, Propel still failed to timely reapply for its tax deed. For the stay of any other act, the automatic stay expires upon the *earlier* of the time the case is closed; the time the case is dismissed; or, in a chapter 13 case like this one, at the time a discharge is granted.

The Debtor's previous case was dismissed on April 13, 2012 and then closed a little more than nine months later on January 23, 2013. The Debtor never received a discharge in his previous chapter 13 case. Thus, the earliest of those dates is April 13, 2012. So the stay as to acts other than those against property of the estate expired on April 13, 2012.

It is 360 days from April 19, 2011, when the tolling began, to April 13, 2012, the latest date on which the stay could have possibly expired and, as a consequence, the latest date on which the tolling could have ended. If you toll the section 197.482 limitations period, which originally expired on June 1, 2017, for 360 days, it would have expired on May 27, 2018—240 before days before Propel reapplied for its tax deed.

## Conclusion

This Court must toll section 197.482's seven-year limitations period to account for an unsuccessful tax deed application and the prior bankruptcy. In particular, the limitations period in this case must be tolled from the time Propel filed its original tax deed application until the time the automatic stay expired on the Debtor's homestead. Regardless of whether you use the date the automatic stay expired for

15

acts against property of the estate or for other acts for tolling purposes, Propel failed

to reapply for a tax deed application within the seven-year limitations period.

Propel's tax certificates have therefore expired.

The Court will enter a separate order sustaining the Debtor's Objection to

Claim No. 3 of Propel Financial.[43]

---

| Attorney Christopher Hittel is directed to serve a copy of this Memorandum Opinion on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of this Memorandum Opinion. |
| --- |

**Christopher Mat Hittel, Esq.**
**Hittel Law, P.A.**
   *Counsel for the Debtor*

**Barry P. Gruher, Esq.**
**Eric D. Jacobs, Esq.**
**Genovese Joblove & Battista, P.A.**
   *Counsel for Tower Capital Management, LLC*

---

[43] Doc. No. 28.